**People of the State of Illinois, Plaintiff-Appellee, v. Robert E. Mundorf, Defendant-Appellant.**

Gen. Nos. 67–153, 67–154. (Consolidated.)

Second District.

May 17, 1968.

Rehearing denied and supplemental opinion Sept. 12, 1968.

S. M. Del Principe, of Chicago, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Kevin P. Connelly, Assistant State's Attorney, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendant was charged with driving while under the influence of intoxicating liquor in violation of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1965, c 95½, par 144), and with operating a motor

vehicle after suspension of license in violation of the Drivers License Act (Ill Rev Stats 1965, c 95½, par 6–303). He was tried by a court without a jury, found guilty of both charges and was sentenced to serve 120 days at Vandalia State Farm for each offense, the sentences to run consecutively.

In this appeal, the defendant contends that the findings of guilty are contrary to the evidence, and that the State did not prove him guilty beyond a reasonable doubt on either charge. No other issues are raised.

The arresting officer, State Trooper Dixon, testified that he came upon the car in question on the East-West Tollway at about 3:15 a. m., on June 28, 1967; that it was raining hard; that the car was in the westbound outside lane with the headlights and brake lights on, the windshield wipers off, the ignition on but the motor not running, and in the driving gear; that the defendant was lying over the steering wheel with his foot on the brakes; and that no one else was in the car or in the vicinity.

The trooper testified that he shook the defendant a long time to awaken him; that he smelled alcohol; that the defendant's clothes were disarranged; that the defendant told him that he had not been driving, and that two other men, who had taken off through the field, had been driving; that later he stated his secretary had been with him; that the defendant cursed him and accused him of stealing his billfold, which was later found in his inside coat pocket; and that, upon learning the defendant's name, he called for help and pulled the car over on the shoulder.

Trooper Smith, who answered the call for help, aided the defendant in walking from the car in question to the police car. The two troopers took the defendant to the police maintenance building. They testified that the defendant refused to take a breathalyzer test or to perform tests requiring "the function of his body"; that he

could barely walk, his face was flushed, his eyes bloodshot and his balance unstable; and that there was a strong odor of alcohol about him. Both troopers were of the opinion that the defendant was under the influence of intoxicating liquor.

The defendant testified that he had not driven the car that night; that he was angry and the flushed condition of his face was natural; that his right eye is glass and could not be bloodshot; and that he asked to take the various tests to establish that he was not intoxicated, but the troopers did not answer him.

He also testified that his wife had picked him up in Chicago early in the evening; that he had one bottle of beer at a bar sometime between 5:00 and 6:00 p. m.; that he and his wife had been at a friend's home until 1:00 or 1:30 a. m., where he was served some coffee and one beer; and that from there, his wife drove to a bar, which was closed. He stated that his wife then drove to the tollway to go home; that they had been arguing and she finally pulled off on the shoulder of the tollway and left him there; that he thought she was kidding and got out of the car to look for her, but could not find her; and that he then went back to the car and fell asleep. He also stated that he never sat on the driver's side of the car; that he turned the ignition on; and that the radio and parking lights were on.

The defendant's wife testified that she and her husband left their friend's house at about 2:00 a. m., and drove on the tollway; that she had not observed her husband drink any alcoholic beverage; that they had been arguing; that she drove the car on the shoulder and left her husband in it; that she left the keys in the car, the gear in park, and the parking lights on; and that she thought her husband was asleep. She stated that a man and woman who were strangers picked her up and took her home, where she arrived at approximately 3:00 a. m.

133

She further testified that she was wearing high-heeled shoes; that it was not raining when she left the car; and that she parked the car near the Wheaton-Naperville exit—approximately one or two miles from her home. She said that the car was at the same location when the State troopers took her back to it after the defendant had been arrested.

The defendant testified that it had drizzled occasionally that night, and placed the car at the same location as did his wife.

The troopers testified that it was raining heavily during the hours in question. Further, they both testified that the car was at milepost 10 on the tollway, and that the Naperville exit is at milepost 13—approximately three miles further west.

The State and the defendant agree that to prove the corpus deliciti, the State must prove beyond a reasonable doubt both that the defendant drove the motor vehicle at the time and place in question, and that he was then and there under the influence of intoxicating liquor. People v. Miller, 23 Ill App2d 352, 356, 163 NE2d 206 (1960).

Direct evidence is not necessary to prove the corpus delicti. If all of the evidence establishes that a crime has been committed and that the defendant committed it, it is, of course, sufficient. If the evidence is all or largely circumstantial, it should be sufficiently compelling to produce a moral and reasonable certainty that the crime was committed and that the defendant committed it. People v. Schulewitz, 87 Ill App2d 331, 336, 337, 231 NE2d 678 (1967); People v. Garnier, 20 Ill App2d 492, 494, 156 NE2d 613 (1959). Where the circumstances can be explained upon a reasonable hypothesis consistent with innocence and leave serious and grave doubt of guilt, a conviction is improper. People v. Magnafichi, 9 Ill2d 169, 173, 137 NE2d 256 (1956).

The evidence in the case at bar is largely circumstantial. It is not such, however, as to leave us with the belief that there is a "reasonable" hypothesis consistent with innocence. The trial judge apparently found it difficult to believe that the defendant's wife drove the car, parked it on the shoulder of the tollway, left the car and her husband about 2:00 a. m., and then set out to walk home in high-heeled shoes, via the tollway, a distance of one or two miles. Even if she were angry with her husband, it does not seem reasonable that she would leave the car and her husband asleep in it, and start to walk home at that hour of the night.

Certainly, the trial court could be justified in believing the troopers' testimony as to the location of the car with reference to the Naperville exit and the weather conditions at the time. People v. Rossolille, 38 Ill2d 316, 321, 231 NE2d 585 (1967); People v. Sims, 32 Ill2d 591, 595, 208 NE2d 569 (1965); People v. Steenbergen, 31 Ill 2d 615, 620, 203 NE2d 404 (1965). These factors make it even more difficult to give credence to the testimony of the defendant's wife with reference to leaving the car to walk home, via the tollway, some five miles distant in the early morning hours, and in a heavy rain.

Even if the defendant's version of who had been driving were accepted, the trooper testified that the car was stopped in the driving lane when he came upon it. If the defendant's wife had driven the car and parked it on the shoulder, the car somehow got into the driving lane after the wife left the car. No other persons were in the vicinity. If the car had been parked on the shoulder, and the officer later found it in the outside, westbound traffic lane, with the defendant asleep, slumped over behind the wheel with the ignition and lights on, a reasonable inference would be that the defendant drove it there. People v. Schulewitz, supra, 337.

The evidence in this case justifies the finding that the defendant was intoxicated. In People v. Garnier, supra, at page 494 the court stated: "(O)bservation of defendant in the act of driving while intoxicated is not an indispensable requirement for conviction under section 47 of the Traffic Act"; and at page 495 further stated: "Generally, circumstantial evidence which produces a reasonable and moral certainty that the accused committed the crime is sufficient to justify a conviction."

■ There was a great deal of conflict in the evidence presented before the court. Apparently, the trial court found it difficult to believe some of the testimony and, it seems, with good reason. There was ample evidence to establish both that the defendant drove the vehicle at the time and place in question and while under the influence of intoxicating liquor. There is no dispute with reference to the fact that the defendant did not have a valid driver's license on June 28, 1967.

■ ■ It was for the trial court to weigh the testimony and determine the credibility of the witnesses. It had the opportunity to observe the witnesses, and in the absence of strong evidence to the contrary, we will not substitute our evidentiary conclusions for those of the trial court.

The judgments of conviction are affirmed.

Judgments affirmed.

MORAN and SEIDENFELD, JJ., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING

Upon petition for rehearing the defendant for the first time has attacked the propriety of the consecutive sentences of 120 days at the Vandalia State Farm for the respective offenses of driving while under the influence of intoxicating liquor and of operating a motor vehicle

after the suspension of his license. He now contends that each of these offenses arose out of the same act; and that the imposition of consecutive sentences for each of these offenses would violate section 1–7(m) of the Criminal Code (Ill Rev Stats 1965, c 38, par 1–7(m)), as well as his constitutional rights. He cites City of Chicago v. Hill (Ill2d), 238 NE2d 403 (1968); In re Hayes (Cal), 442 P2d 366 (1968); and other Illinois cases, in support of his contention.

In the following Illinois cases cited by the defendant, the offenses charged arose out of the same conduct: City of Chicago v. Hill, supra,—obstruction of traffic and disorderly conduct—the *unlawful* blocking of the intersection; People v. Squires, 27 Ill2d 518, 190 NE2d 361 (1963)—burglary and larceny—the *unlawful* taking of the same merchandise; People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299 (1963)—rape and incest—the *unlawful* carnal knowledge of the same person; People v. Schlenger, 13 Ill2d 63, 147 NE2d 316 (1958)—armed robbery and grand larceny—the *unlawful* taking of the same property; and People v. Weaver, 93 Ill App2d 311, 236 NE2d 362 (1968)—rape and aggravated battery—the *unlawful* aggression against the will of the victim. In People v. Weaver, supra, the court, while holding that rape and aggravated battery arose out of the same conduct, distinguished rape and burglary as offenses not arising from the same course of conduct, but from two separate and distinct acts which gave rise to separate and distinct substantive offenses though occurring at relatively the same time.

■ We hold that the two offenses in the case at bar —driving while under the influence of intoxicating liquor and operating a motor vehicle after suspension of license—do not arise out of the same conduct. The common denominator is not the act of driving a motor vehicle. That act, considered alone, is not unlawful. To render that act unlawful, the concurrence of intoxication in the

one instance, and the licensing act violation in the other, are required. The resultant offenses, therefore, arise from separate and unrelated acts of misconduct. This distinguishes this case from the cases cited by the plaintiff.

There would appear to be no common denominator between the two acts involved in the case at bar. The offenses did not result from the same conduct. Rather, the defendant committed two separate and distinct acts of misconduct at the same time, which resulted in the separate and distinct substantive offenses charged. Consequently, section 1–7(m) of the Criminal Code (Ill Rev Stats 1965, c 38, par 1–7(m)) does not proscribe consecutive sentences and the constitutional rights of the defendant are not violated.

In the case of In re Hayes, supra, the majority of the California Supreme Court disallowed separate sentences for a defendant charged with driving while his license was revoked and drunken driving. It held that while the subjective elements both of driving without a license and of drunken driving were present, the defendant committed only one act—that of driving the vehicle. However, we are more favorably impressed by the rationale of the minority opinion which held that the conduct prohibited by the Code was driving without a license and driving while intoxicated; that the subjective element is merely the defendant's intent to drive or knowledge that he is driving; and that these two offenses do not share a common element of physical conduct within the meaning of the Code.

In his petition for rehearing, the defendant also urges as error that the court's opinion has completely disregarded the testimony of the defendant and his witnesses. Such assertion is without merit. Under the law, it is the province of the trier of fact to weigh the evidence and determine the credibility of witnesses. Where the evidence on an issue is conflicting but legally sufficient

138

if the State's witnesses are believed, the question is for the trier of fact to determine. People v. Jennings, 84 Ill App2d 33, 39, 228 NE2d 566 (1967) ; People v. Ray, 80 Ill App2d 310, 316, 225 NE2d 467 (1967). This determination includes belief or disbelief of a witness' testimony as well as resolving conflicts in the evidence. The trial court observed the witnesses, their candor or evasiveness, and their demeanor while testifying, and we will not interfere with its findings merely because there were conflicts in the testimony. People v. Castanza, 92 Ill App2d 419, 236 NE2d 251, 257 (1968).

For the foregoing reasons, we affirm the judgments of conviction and the consecutive sentences as set forth in our original opinion.

Judgments affirmed.

MORAN and SEIDENFELD, JJ., concur.