People of the State of Illinois, Plaintiff-Appellee, v.
Jose R. Zayas, Defendant-Appellant.

Gen. No. 53,092.

First District, Fourth Division.
November 13, 1968.

Jose R. Zayas, pro se, of Chicago, appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver D. Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Jose R. Zayas, defendant, was convicted of driving a motor vehicle while under the influence of intoxicating liquor. The case was tried by the court without a jury, and defendant was fined $100 and costs. He here argues that the evidence heard in the trial court was not sufficient to convict him. At the trial he was represented by a lawyer of his own selection; in this court he appears pro se and files his own brief. The evidence heard in the trial court was in sharp conflict.

The defendant was accused of driving a car without headlights, making a right turn without a signal, and driving a motor vehicle while intoxicated. He pleaded not guilty and waived the jury.

Robert Mackey, a police officer in the City of Chicago, testified that at 1:10 a. m., on May 1, 1967, while driving south on Damen Avenue, he saw the defendant's vehicle going north on Damen Avenue with no lights; that he made a U-turn and pursued the defendant who had turned into the alley between Potomac and Evergreen Streets and proceeded west at a slow rate of speed. The officer stated that his siren was on, as well as his spotlight, and he was also honking his horn. The defendant turned north on Hoyne, then right on Evergreen, and pulled up

at 2727 Evergreen. The officer stopped behind the defendant, approached him, informed him of the traffic violations, and asked to see his driver's license, which the defendant refused to produce. The officer noticed the odor of alcohol on the defendant and asked if he had been drinking. The defendant told him it was none of his business.

The officer then arrested the defendant and took him to the police station where he at first refused to answer questions and was combative; his eyes were bloodshot, his face was flushed and his attitude was excited. He was advised of his rights, then after a "breathalyzer" reading, he was given performance tests during which his turning and balance were unsure and he was hesitant in placing his finger to his nose and slow in picking up coins.

The officer testified that he had been on the police force for 12 years and had had opportunities to observe hundreds of people under the influence of intoxicating alcohol; that in his opinion the defendant was intoxicated and unable to operate a vehicle. On cross-examination, the officer testified that the defendant had told him at the police station that he was a diabetic.

Officer Barch testified that he had been a police officer for 12 years and an evidence technician for three years, having taken a course of training which qualified him for testing individuals for intoxication; that he had given the defendant the test, and that from a reading of the breathalyzer it was his opinion that the defendant was under the influence of intoxicating liquor.

Andres Jimenez, the first witness for the defendant, testified that on the evening in question he first saw the defendant with his wife and four children at the home of one Lopez; that during the time they were there he saw the defendant drink part of a glass of beer. He stated that he went in the car with defendant and his family to 5721 South Peoria Street at about 6:00 p. m. Jimenez'

father-in-law was also in the car and they took him to his home, then drove to defendant's home at 2727 Evergreen, where they arrived about 10:00 p. m. The witness stated that he saw no police cars following them, nor did he hear any horns or sirens or see any light flashing. The passengers all went into the defendant's house, and after about 15 minutes someone came in and told the defendant that the battery had been stolen from his car. After checking the car the defendant returned to the house and said he was going to report the theft to the police. He then went to the police station at about 10:15 p. m. The witness was asked if defendant had driven his car to the police station and he said he did not know.

The defendant took the stand and testified that on the evening in question he was at Lopez' apartment where he drank a couple of beers; that they all left in his car, took Jimenez' father-in-law home, then went to defendant's home at 2727 Evergreen. He let the passengers out in the alley to enter the rear apartment, then drove to the front to park his car. He stated that he saw no police cars and heard no siren or horn when he parked the car at about 10:00 p. m., and went into his apartment. After he had been there about half an hour a neighbor, one Santiago, came to his door and told him that some "kids were fooling around" with his car. The defendant went down to the street and found there was no battery in his car; he then returned to the house and said he was going to the police station to report the stolen battery. He stated that he went to the Wood Street station, reported the incident, and returned to his home where he waited on the sidewalk for the police to come and investigate. When they did not arrive he decided to go to bed, and as he was leaving, a police officer called to him and began questioning him about his car and whether he had been drinking. The defendant did not explain that he had been to the police station to make a report, nor did he explain that the

battery was stolen. He became angry at being questioned and was arrested and taken to the police station.

William Rodriguez testified on behalf of the defendant that he lived next door to him; that he was throwing a football when he saw boys take the battery from defendant's car; that he saw the defendant come out later and look into the car and try to start it; that he saw the police come to the scene, and he left.

After hearing argument of counsel the court found the defendant guilty of the charge of driving while under the influence of intoxicating liquor, and imposed the minimum fine.

██ The evidence was definitely in conflict. It is for the trial court to determine both the credibility of the witnesses and the weight to be given their testimony. People v. DeGroot, — Ill App2d —, — NE2d —. The testimony of the arresting officers, together with the scientific evidence of the breathalyzer, was sufficient to convict. People v. Mundorf, 85 Ill App2d 244, 229 NE2d 313.

█ The defendant also objects to a remark of the State's Attorney that he had told a "far fetched" story, and that "the only thing that I can understand is how it could be so diametrically opposed is that the defendant is completely perjuring himself and made up the whole story." In a trial before the court we do not think such a statement could be construed as being so prejudicial as to require reversal. People v. Sinclair, 27 Ill2d 505, 190 NE2d 298. In this case the defendant was represented by a lawyer of his own choosing, and there is nothing appearing in the record which indicates that the lawyer did not properly perform his duty toward the defendant.

It seems strange that if the story of the defendant were true as to the car lacking a battery, he did not make that statement to the police at the time of his arrest. An examination of the car would have clearly revealed that

either the defendant or the police officer was not telling the truth.

Defendant relies greatly on the testimony of Rodriguez, who testified that he saw the battery removed. However, he also testified that after defendant examined the car he went into his house, came outside, went in and came out again; that then the police arrived. This contradicts defendant's statement about going to the police station after he discovered that the battery was missing.

The court, in its zealous effort to arrive at the truth, examined the police officer relative to the possibility that he was following a different Rambler. The officer stated: "From the time we entered the alley until the time we got in front of his house, we were never more than fifteen feet behind him."

After a careful examination of the record, it seems to us that the trial court could reach no other conclusion than that the defendant was guilty as charged. The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.